IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONALD TAPP                                    :
10063 Camper Way South                         :
Largo, Maryland 20774                          :
                                               :
          Plaintiff,                           :
                                               :
     v.                                        :   Case No. _____
                                               :
                                               :
WASHINGTON METROPOLITAN                        :
AREA TRANSIT AUTHORITY                          :
600 5th Street, N.W.                            :
Washington, D.C. 20001                         :
                                               :
          Defendants.                          :
                                               :
_____              :

**DEFENDANT'S FILING OF PREVIOUS
FILINGS IN STATE COURT**

Defendant Washington Metropolitan Area Transit Authority ("WMATA") hereby submits

the filings previously made by Plaintiff in state court in this action being removed.

1.  Complaint.

2.  Summons.

3.  Initial Order and Addendum.

These documents constitute all documents known to WMATA related to this case.

Respectfully submitted,

WASHINGTON METROPOLITAN AREA
 TRANSIT AUTHORITY

Michael K. Guss #465171
Associate General Counsel
600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-1468; (202) 962-2550 (fax)
Attorney for Defendant WMATA

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Filing of Previous Filings in State

Court was electronically filed and transmitted this 22th day of May 2015 to:

Iris McCollum Green
Green & Foushee
1730 M Street, N.W.
Suite 609
Washington, D.C. 20036

Counsel for Plaintiff

Michael K. Guss



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

DONALD TAPP

Vs.                                                            C.A. No.        2015 CA 003112 B

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

## **INITIAL ORDER AND ADDENDUM**

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order.  As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order.   Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to:  Judge JOHN M MOTT
Date:   April 29, 2015
Initial Conference: 10:00 am, Friday, August 21, 2015
Location:  Courtroom 517
           500 Indiana Avenue N.W.
           WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

_Donald Tapp_
_____
Plaintiff

vs.

Case Number **15 - 0 0 3 1 1 2**

_WMATA_
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_Iris McCollum Green_
_____
Name of Plaintiff's Attorney

_1730 M St., NW, Ste. 609_
_____
Address
_Wash., DC 20036_
_____

_(202) 785-1171_
_____
Telephone

_Clerk of the Court_

By _Adrienne J. Fraush_
_____
Deputy Clerk

Date _4/29/2015_
_____

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ·

IMPORTANT:  IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

RECEIVED
Civil Clerk's Office
APR 2 9 201͟
Superior Court of the
District of Columbia
Washington. D.C.

Donald Tapp                                  )
10063 Camper Way South                       )
Largo, MD 20774                              )
                                             )          **15 - 0 0 3 1 1 2**
            Plaintiff                        )
                                             )          Civil Action No. _____
                                             )
            v.                               )
                                             )
                                             )
Washington Metropolitan Area                 )
  Transit Authority (a/k/a "WMATA"           )
600 Fifth Street, N. W.                       )
Washington, D. C. 20001                      )
                                             )
                                             )
            Defendant                        )
                                             )
                                             )
Serve: Carol O'Keefe, Esquire                )
        General Counsel's Office             )
        WMATA                                )
        600 Fifth Street, N. W.              )
        Washington, D. C.                    )
                                             )
_____)

**COMPLAINT FOR DEPRIVATION OF CONSTITUTIONAL RIGHTS, WRONGFUL
TERMINATION, BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD
FAITH AND FAIR DEALING, DEFAMATION OF CHARACTER (LIBEL PER SE),
FALSE LIGHT INVASION OF PRIVACY, AND INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS**

INTRODUCTION

This is an action for declaratory relief against the Washington Metropolitan Area

Transit Authority, hereinafter "WMATA," for its decision to terminate Plaintiff's

employment without affording him the procedural and substantive due process

mandated by the United States Constitution and without affording him the benefits of

the implied contract as set out in its Employee Handbook.

Plaintiff seeks a declaration that the decision to terminate his employment without affording him a hearing violates the guarantees of the due process clause of the 5th Amendment to the United States Constitution.

## JURISDICTION AND VENUE

1.       Jurisdiction of this action is conferred on the Court pursuant to the Washington Metropolitan Area Transit Regional Compact, which establishes original jurisdiction in this Court over WMATA matters pursuant to WMATRC Article XVI § 81, codified in District of Columbia law as D. C. Code Ann. § 9-1107.10 and the Fifth Amendment to the United States Constitution, for denial of due process.

2.       Venue is properly vested in this Court under 28 U.S.C. § 1391(e) since the events and omissions giving rise to the claims herein occurred in the District of Columbia.

## PARTIES

3.       Plaintiff Donald Tapp, at all times pertinent was a law abiding citizen, an employee of WMATA, and a resident of the State of Maryland.

4.       Defendant WMATA was created when Congress approved the Washington Metropolitan Area Transit Authority Compact ('WMATA Compact"), D. C. Code §§ 9-1107.01 et seq., which was signed by the District of Columbia, Maryland and Virginia.

5.       By the terms of the WMATA Compact that created it, WMATA is liable for its torts or omissions and those of its Directors, officers, employees and agents committed in the conduct of any proprietary function. D. C. Code § 9-1107.01 (80).

2

6.     Violation of a constitutional right and defamation are both proprietary functions within the meaning of the WMATA Compact.

## FACTS

7.     Plaintiff Donald Tapp began his employment with WMATA as a bus operator in 1989.  Over a period of years, Plaintiff Tapp advanced in his career by being promoted to Depot Clerk, Street Supervisor, Communication Specialist, Bus Training Instructor, Senior Street Supervisor, Instructor for Street Supervisors, Operations Supervisor, Assistant Superintendent, Bus Transportation, Superintendent Bus Transportation, and ultimately Acting Director for Bus Transportation.

8.     In 2007, when Metro's General Superintendent resigned from WMATA to accept a position with the Metropolitan Area Transit Authority (MATA), Houston, Texas (Harris County), she took Plaintiff Tapp with her.  Plaintiff worked for the MATA of Houston, Texas Transit for a period of two (2) years.  Upon resigning his position with the City of Houston, Plaintiff Tapp returned to WMATA accepting a position as a Superintendent Bus Transportation, and serving for a limited period as Acting Director for Bus Transportation.  Plaintiff Tapp has worked for WMATA for a period of twenty-five (25) years.

9.     On or about January 2, 2015, Plaintiff Tapp arrived at the Montgomery Division to work the PM (evening) line, but was unable to park his vehicle in his assigned space because another vehicle was already parked there.

10.     Upon entering his office, Plaintiff Tapp inquired as to the owner of the

3

vehicle parked in his space and learned that the vehicle belonged to his Office Manager, Paul Hobbs. Plaintiff Tapp requested Mr. Hobbs to remove his vehicle from his parking space. Plaintiff also requested Mr. Hobbs to come speak with him in his office once he had moved his vehicle from Plaintiff's assigned space.

11.     After waiting approximately 15 minutes, Plaintiff Tapp noticed that while Mr. Hobbs had gone outside of the office, he had not yet removed his vehicle from Plaintiff's parking space. After waiting another 15 minutes Plaintiff Tapp went downstairs and again requested Mr. Hobbs to remove his vehicle from Plaintiff's parking space and to come to his office once the mission was completed. A bus operator was present during this encounter.

12.     While Mr. Hobbs did eventually remove his vehicle from Plaintiff Tapp's parking space, he failed to report to Plaintiff's office as had been requested.

13.     After an extended period, Mr. Hobbs finally reported to Plaintiff's office where various work related issues of noncompliance were discussed with him. As a result of this discussion, Mr. Hobbs appeared to become angry and defensive so Plaintiff Tapp informed him that he was being suspending with pay and directed him (Hobbs) to meet with him on Monday, January 5, 2-15 at 9:00 a.m.

14.     Immediately after suspending Mr. Hobbs with pay, Plaintiff Tapp telephoned his supervisor, Ted Harris to inform him of the incident and requested that Mr. Hobbs be moved from his Unit. Mr. Harris was unable to listen to the details of the incident with Mr. Hobbs at that time. Subsequently, on January 5, 2015, Mr. Harris

requested a written statement from Plaintiff Tapp.  On the following day, Mr. Harris requested a second written statement from Plaintiff Tapp and requested a meeting for January 7, 2015.

15.     During Plaintiff Tapp's meeting with Mr. Harris on January 7, 2015, he was placed on immediate suspension.

16.     In retaliation for his discipline, Mr. Hobbs told Plaintiff Tap's supervisor that he was assaulted during his discussions with Plaintiff.  Although Mr. Hobbs' allegation was completely fabricated, Plaintiff Tapp was suspended for a period of nineteen (19) days obstensively so that an investigation could be conducted on Mr. Hobb's allegations.  Although Plaintiff Tapp was informed that he would be contacted by an investigator, no such contact was ever made and on the twentieth day of his suspension; he was terminated from his position.

17.     On the date that Plaintiff Tapp was suspended, he was scheduled to meet with one of his employees [referred to in this complaint as Employee B] who had recently undergone a drug test which was found to be positive for banned substances

18.     In accordance with WMATA policy, Employee B was counseled and provided with an EAP packet from the Employee Assistance Office that explains the consequences of such actions.  Plaintiff Tapp further informed Employee B that he would have to contact Human Resources and his immediate supervisor for further directions with respect to this event.  Employee B was also scheduled to meet with Plaintiff Tapp on January 7, 2015, but was unable to do so as a result of Plaintiff being

suspended.

19.     As a result of Plaintiff Tapp's suspension on January 7, 2015, he unable to meet with Employee B on January 7, 2015.

20.     On the twentieth day after Plaintiff Tapp was suspended, he was contacted by WMATA'S Office of Equal Employment Opportunity (EEO) where a number of WMATA officials including the Michelle Chapman of the EEO office tried without success to force him to resign his position. When the collective efforts to force Plaintiff Tapp to resign his position were not successful, he was handed a letter of termination from his position.

21.     The letter of termination given to Plaintiff Tapp did not contain any information with respect to his rights to appeal or grieve the termination (termination letter attached), or his right to a hearing on the matter.

22.     Moreover, the termination letter made no reference to the allegations made by Mr. Hobbs.  Instead, the termination letter contained a number of unfounded allegations regarding Plaintiff Tapp's job performance although his performance exceeded that of several of his fellow Superintendent's, neither of them were terminated from their employment.

## COUNT I
### (Constitutional Violations under the 5th Amendment to the United States Constitution)

23.     The Plaintiff realleges and incorporates by reference paragraphs (one through twenty-two) as if fully set out herein.

24.     Defendant WMATA wrongfully and illegally terminated Plaintiff Tapp's

employment.

25.     Defendant WMATA erroneously and illegally and in violation of the 5th Amendment to the United States Constitution denied Plaintiff Tapp the right to grieve their decision to terminate his employment.

26.     Defendant WMATA erroneously and illegally and in violation of the 5th Amendment to the United States Constitution denied Plaintiff Tapp the right to a hearing on their decision to terminate his employment.

## COUNT II
(Wrongful Termination in violation of the 5th Amendment to the United States Constitution)

27.     The Plaintiff realleges and incorporates by reference paragraphs (one through twenty-six) as if fully set out herein.

28.     Plaintiff was wrongfully terminated when he was terminated without being advised of his right to grieve or appeal the decision to terminate his employment.

29.     Plaintiff was wrongfully terminated when he was terminated without being provided a hearing on the decision to terminate his employment.

## COUNT III
(Breach of Contract)

30.     The Plaintiff realleges and incorporates by reference paragraphs (one through twenty-nine) as if fully set out herein.

31.     Plaintiff Tapp was a 25 year African American employee of Defendant WMATA.  Defendant WMATA's Department of Bus Services Employee's Handbook states, in pertinent part:

"1.15.6      Discipline is administered in the form of cautions, reprimands, suspension from duty or dismissal.

"1.15.7 states, in pertinent part, WMATA wants to retain you as an employee. Our progressive discipline policy is meant to make you aware of poor performance and give you sufficient opportunity for correction.

"1.15.8 states, in pertinent part, some offenses by nature are more serious than others and may result in suspension or even dismissal upon the first offense. Willful infractions or the continued necessity to administer cautions, reprimands or suspensions will lead to dismissal.

"1.15.9 states, in pertinent part, if an employee heeds the warnings and makes the necessary corrective actions of progressive discipline, dismissal should not be necessary. However, for employees who fail to adhere to the opportunity to correct and change their behavior through the progressive discipline dismissal should not be a surprise."

32.    While Plaintiff Tapp was in the process of counseling one of his subordinate employees, said employee made an allegation that Plaintiff Tapp assaulted him. As a result, Plaintiff Tapp was placed on suspension so that an investigation could be conducted. However, Defendant failed to conduct the investigation into the subordinate's accusations against Plaintiff Tapp since he was never contacted to give his side of the matter. Rather, after being on suspension for 19 days, Plaintiff was summoned to the office (WMATA) and summarily fired. Said letter of termination did not even mention the subordinate's accusation, but rather contained a number of allegations to which Plaintiff Tapp was denied the opportunity to offer an inclusive response.

33.    Plaintiff Tapp was never accorded the progressive discipline outlined in Defendant's handbook. Moreover, the letter of termination handed to Plaintiff Tapp

8

cited poor performance as a substantial reason for his firing.  However, of all the

Superintendents, Plaintiff Tapp met four of his six (6) performance targets, which was

exceeded by only one (1) other Superintendent who met five of the performance targets.

By contrast, at least two (2) of the Superintendents failed to meet any of their

performance targets; another met four as did the Plaintiff; one Superintendent met one

performance target, one Superintendent met two (2) performance targets and one

Superintendent met three (3) performance targets.

34.     By failing to adhere to the progressive discipline policy outlined in the

WMATA Employee Handbook which is tantamount to a contract and enforceable by

the courts, see *Howard University v. Best*, 484 A.2d 958, 970 (D.C. 1984),  Defendant

WMATA breached their duty as set forth in their Employee Handbook and contract.

35.     Consequently, Defendant WMATA's breach of their contract with Plaintiff

Tapp caused him to suffer severe damages resulting in the loss of his income, ability to

provide for himself and his family, injured his reputation in the community of his co-

workers, and caused him to suffer a loss of self esteem.

## COUNT IV
### (Breach of Covenant of Good Faith and Fair Dealing)

36.     The Plaintiff realleges and incorporates by reference paragraphs (one

through thirty-five) as if fully set out herein.

37.     In terminating Plaintiff Tapp without affording him the rights set out in

their Employee Handbook, Defendant WMATA evaded the spirit of the contract and

denied Plaintiff the opportunity to perform in accordance with the contract as well.

9

## COUNT V
### (Defamation of Character)
### Libel Per Se

38.    The Plaintiff realleges and incorporates by reference paragraphs (one through twenty-seven) as if fully set out herein.

39.    A short time after being placed on suspension, Plaintiff Tapp learned that the Metro Transit Police Criminal Investigative Division published a flyer with his photograph and employee number  beneath a bold heading entitled BOLO, which stands for " Be On The Lookout." The following wording is printed directly beneath the photo:

"The above pictured employee is **NOT** allowed on any WMATA property.  If seen at a WMATA facility, please contact MTPD (Metro Transit Police Division).

This WMATA Criminal Division flyer was published throughout WMATA and in all of the metro stations that it operates not only to Plaintiff's community of colleagues, co-workers, and WMATA employees, but to his friends, acquaintances, visitors to WMATA facilities, as well as strangers.

40.    This flyer depicts Plaintiff Tapp as a common criminal and implies that he has committed a crime, which prompted many of his colleagues, co-workers, associates and friends to view him as such and tended to injure him and his reputation in his trade, profession and community standing.

41.    This flyer caused injury to Plaintiff Tapp in his trade, profession, in his employment, and his enjoyment of life.

42.    The flyer is misleading, disparaging and defamatory and caused Plaintiff

10

Tapp to suffer loss of reputation, embarrassment and personal humiliation.

43.     The false and defamatory flyer published by Defendant WMATA held

Plaintiff Tapp up to contempt and disgrace and caused him to be shunned and avoided

by the community as well as the community of his co-workers.

## COUNT IV
### (False Light/Invasion of Privacy)

44.     The Plaintiff realleges and incorporates by reference paragraphs (one

through forty-three) as if fully set out herein.

45.     Defendant issued the false and libelous flyer that implied that Plaintiff

Tapp had committed a crime.

46.     The libelous flyer of and concerning Plaintiff Tapp was published to the

community of his co-workers and friends, as well as the metro riding public and injured

his reputation in the community of his co-workers, friends as well as strangers.

47.     The libelous flyer which was published to the community of Plaintiff

Tapp's co-workers and friends, as well as the metro riding public, also contained his

photograph.

48.     The libelous flyer published by the defendant in its workplace and the

metro stations which it operates placed Plaintiff Tapp in a false light and made people

believe that he was a criminal.

## COUNT V
### (Intentional Infliction of Emotional Distress)

49.     The Plaintiff realleges and incorporates by reference paragraphs (one

through forty-eight) as if fully set out herein.

11

50.     Defendants issued the libelous flyer on or about February 3, 2015, which falsely depicts Plaintiff as a criminal and implies that he has committed a crime.

51.     Defendant acted with malice in publishing through its Metro Transit Police Criminal Investigation Division the false and libelous flyer asking the general public as well as its employees to "Be On The Lookout" (BOLO) for Plaintiff implying that he had committed a crime.

52.     The acts of Defendant as alleged herein were done with the intent to cause severe emotional distress to Plaintiff Tapp.  At no time did Defendant retract their false and libelous publication against Plaintiff Tapp.

53.     The Defendant's false, misleading and libelous publication put Plaintiff Tapp in fear and caused him garden variety emotional distress.

54.     Defendant's acts were outrageous, extreme and intentional and caused Plaintiff Tapp to suffer severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant WMATA in the amount of Five Hundred Thousand Dollars ($500,000.00) for each count of the complaint and punitive damages in the amount of One Hundred Fifty Thousand ($150,000.00) plus interest thereon, his costs, and attorney fees.

Respectfully submitted,

GREEN & FOUSHEE

By: _/s/Iris McCollum Green_
_____/s/Iris McCollum Green
IRIS McCOLLUM GREEN, ESQ.
D. C. Bar No. 932590
1730 M Street, N. W.
Suite 609
Washington, D. C. 20036
(202) 785 - 1171


## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY.

# METRO TRANSIT POLICE
## CRIMINAL INVESTIGATION DIVISION
### 8201 Ardwick Ardmore Road, Landover, MD 20785

# BOLO
## DONALD TAPP (879981)



The above pictured employee is **NOT** allowed on any WMATA proper
:neral public. If seen at a WMATA facility, please contact MTPD Con
l21.