# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DONALD TAPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15–cv-0768 (KBJ) |
| | ) | |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Donald Tapp had been an at-will employee of the Washington Metropolitan Area Transit Authority ("WMATA" or "Defendant") for approximately 25 years as of February 3, 2015, when he was terminated from his position as the Superintendent of the Montgomery Bus Division for allegedly violating internal work rules.  Shortly after Tapp's termination, WMATA's Metro Transit Police issued a "Be On the Look-Out" ("BOLO") flyer, warning the public that Tapp was no longer allowed on WMATA's property.  When Tapp later filed a lawsuit against WMATA in Superior Court, WMATA removed his action to this Court.  Tapp's amended complaint alleges that the termination of his employment violated his Fifth Amendment right to due process because WMATA failed to follow its own internal procedures (*see* Am. Compl., ECF No. 24, ¶¶ 23–25); that WMATA's issuance of the BOLO flyer transgressed 42 U.S.C. § 1983 because it harmed his reputation and ability to obtain new employment in violation of his constitutional liberty interests under the Fifth and Fourteenth

Amendments (*see id.* ¶¶ 27–33); and that Tapp was treated differently than similarly-situated managers because of his gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 (*see id.* ¶¶ 39–51).  The amended complaint also claims that the BOLO flyer falsely depicted Tapp as a criminal to his friends and to the community at large, thereby placing him in a false light and invading of his privacy (*see id.* ¶¶ 34–38), and that this action by WMATA also amounted to intentional infliction of emotional distress (*see id.* ¶¶ 53–58).

Before this Court at present is WMATA's renewed motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  (Def.'s Renewed Mot. for J. on the Pleadings ("Def.'s Mot."), ECF No. 25.)[1]  WMATA argues that it is entitled to judgment in its favor on all five claims in Tapp's amended complaint, and this Court generally agrees with WMATA's arguments, except as they pertain to Tapp's allegation that he is the victim of gender discrimination in violation of Title VII (Count III). Specifically, as explained fully below, the Court finds that WMATA is entitled to judgment on Counts I, II, IV, and V as a matter of law for a variety of reasons, including the fact that Tapp does not hold a protectable property interest as is needed to establish a Due Process violation, and that WMATA is neither subject to Section 1983 claims nor able to be sued for the common-law torts that Tapp has brought in this lawsuit.  However, Tapp's gender-discrimination claim cannot be resolved in WMATA's favor at this time, because WMATA's motion seeks judgment based on an affirmative defense that WMATA must plead and prove, even if Plaintiff does not

---

[1] As explained *infra* in Part I.B, WMATA's initial Rule 12(c) motion was mooted when this Court granted Tapp leave to amend his original complaint.

oppose WMATA's assertion.  Accordingly, WMATA's motion for judgment on the pleadings will be **GRANTED IN PART AND DENIED IN PART**, as explained below. A separate order consistent with this opinion shall follow.

## I.     BACKGROUND

### A.     Factual Background

The following facts are alleged in Tapp's amended complaint, and must be accepted as true for the purpose of the pending motion.  *See Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 47 (D.D.C. 2005) ("[U]nder [a] Rule 12(c) motion, the Court assumes the veracity of all factual allegations set forth in [the] Complaint." (citing *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985))).

Tapp was a WMATA employee for about twenty-five years, until the termination of his employment on February 3, 2015.  (*See* Am. Compl. ¶¶ 7–8; Termination of Emp't Mem., Ex. 1 to Am. Compl., ECF No. 24-2, at 1–3.) [2]  Tapp last served as the Superintendent of Bus Transportation ("BTRA") of WMATA's Montgomery Division. (*See* Am. Compl. ¶¶ 8, 41.)  On or about January 2, 2015, approximately a month before his termination, Tapp suspended one of his subordinates—office manager Paul Hobbs (*see id.* ¶¶ 9–10)—after Hobbs became "angry and defensive" during a discussion about Hobbs's "various work[-]related issues of noncompliance" (*id.* ¶ 13).  Hobbs complained about the disciplinary action to Tapp's supervisor, Ted Harris, and alleged "that he was assaulted during his discussions with Plaintiff."  (*Id.* ¶ 16.)  As a result, Harris called a meeting with Tapp on January 7, 2015, and "suspended [Tapp] for a

---

[2] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

period of nineteen (19) days" pending an internal investigation into Hobbs's allegations.  (*Id.*; *see also id.* ¶¶ 15–16.)  At the end of this period, Tapp was "contacted by WMATA'[s] Office of Equal Employment Opportunity (EEO) where a number of officials . . . tried without success to force him to resign his position[.]"  (*Id.* ¶ 20.)  Then, on February 3, 2015, Tapp was officially terminated from his employment, allegedly without being provided any instructions as regarding how "to appeal or grieve" the decision.  (*Id.* ¶ 21; *see also* Termination of Emp't Mem. at 1.)[3]

Curiously, in the "termination letter" that Tapp received from WMATA, "no reference to the allegations made by . . . Hobbs" appeared.  (Am. Compl. ¶ 22.)  Instead, the letter recited several other events as grounds for Tapp's termination, including: (1) that Tapp had violated WMATA rules when he fired another employee on December 30, 2014, without first consulting with his superiors or obtaining a concurrence; (2) that Tapp had violated WMATA Comptroller Procedures when he failed to secure the Montgomery Division's petty cash in a safe under a combination lock; and (3) that Tapp had received poor overall performance evaluations during the immediately preceding year, along with reported incidents of improper and unprofessional conduct.  (*See* Termination of Emp't Mem. at 1–2.)

Shortly after Tapp was fired, he "learned that . . . WMATA had caused its Metro Transit Police Criminal Investigative Division to publish a flyer with his photograph

---

[3] Tapp repeatedly states that "on the twentieth day of his suspension[] he was terminated from his position."  (Am. Compl. ¶ 16; *see also id.* ¶ 20; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 27, at 2.)  But according to the documentation that was referenced in and attached to Tapp's amended complaint, Tapp was terminated on February 3, 2015 (*see* Termination of Emp't Mem. at 1), which was twenty-seven days after he was placed on suspension on January 7, 2015.  However, as far as this Court can tell, the seven-day difference between the complaint's allegations and the evidence provided is not material to any of the legal issues presented in this case.

and employee number[,]" warning readers that Tapp was not allowed on WMATA's property.  (Am. Compl. ¶ 28.)  The flyer, which bore the "BOLO" acronym, was "published throughout WMATA and in all of the metro stations that it operates[,]" and was visible to Tapp's co-workers and friends, as well as to any "visitors to WMATA facilities[.]"  (*Id.*)

### B. Procedural History

On or about April 29, 2015, Tapp filed a complaint against WMATA in the Superior Court of the District of Columbia, which WMATA then removed to this Court, along with its answer to the original complaint, pursuant to 28 U.S.C. §§ 1441, 1446, and D.C. Code § 9-1107.01(81).  (*See* Notice of Removal, ECF No. 1; Original Compl., ECF No. 1-1, at 6–19; Def.'s Answer, ECF No. 1-4.)  On January 5, 2016, Tapp filed an Amended Complaint (ECF. No. 24), alleging that WMATA (1) "wrongfully and illegally" terminated his employment without "observ[ing] its own rules . . . [and] policy instructions" in violation of his Fifth Amendment rights (*id.* ¶¶ 23–25 (Count I)); (2) violated 42 U.S.C. § 1983 by depriving Tapp of his liberty interest that the Fifth and Fourteenth Amendments protect, when WMATA "negligently published" or directed Metro policemen to publish the BOLO flyer "throughout WMATA and in all of the metro stations that it operates" and thereby injured Tapp's "reputation in his trade, profession[,] . . . community standing[,] . . . quest for new employment, and his enjoyment of life" (*id.* ¶¶ 28–30, *see also id.* ¶¶ 27–33 (Count II)); (3) discriminated against Tapp on the basis of his gender by holding him to stricter terms and conditions in his office and firing him for the same actions that had also been undertaken by a female predecessor (*see id.* ¶¶ 39–52 (Count III)); (4) issued a "false and libelous"

public BOLO flyer with Tapp's photograph "that implied that [he] had committed a crime" (*id.* ¶ 55), thereby placing him in false light and invading his privacy (*see id.* ¶¶ 34–38 (Count IV)); and (5) maliciously published the BOLO flyer in an "outrageous, extreme and intentional" manner, causing Tapp "to suffer severe emotional distress" (*id.* ¶ 58; *see also id.* ¶¶ 53–58 (hereinafter referred to as "Count V")).[4]

Notably, in his amended complaint, Tapp contests WMATA's charges against him generally (*see, e.g., id.* ¶ 22), and also specifically challenges the allegation that he had mishandled petty cash; he explains that when he was appointed as superintendent of the Montgomery Division in September of 2013, "there was no petty cash made available to [him]" and, "[w]hile there was a safe in the Division [to store petty cash], no one had access to the combination by which it could be unlocked[.]"  (*Id.* ¶ 41.) Moreover, after Tapp had allegedly "inquir[ed] about the availability of petty cash" (*id.*), he discovered that his female predecessor, Jacqueline Smith, had not kept the petty cash funds in a safe or secure place herself (*see id.* ¶¶ 41–42)—instead, at a meeting on October of 2013, she proceeded to "borrow $200.00 in cash from a co-worker, Mr. Summon Cannon, which she then handed over to [Tapp] for the Montgomery Division petty cash" (*id.* ¶ 42).  Because Tapp was not provided with a safe or combination, he purportedly "was left to secure the monies in his WMATA company vehicle."  (*Id.* ¶ 41.)  Furthermore, according to Tapp, while he was admonished for failing to secure the funds in a combination safe, "it was clear that his

---

[4] Tapp's amended complaint inexplicably misorders the counts that it alleges—Count III is listed *after* Count IV (*see* Am. Compl. at 8–9)—and the allegations regarding intentional infliction of emotional distress are identified by a separate heading but does not contain any count number at all (*see id.* at 12). The Court would ordinarily order Plaintiff to revise its pleading to reflect all five counts, properly labeled and ordered numerically, but given the disposition of Defendant's motion to dismiss as explained herein, the Court has opted to refrain from requiring Plaintiff to engage in that undertaking.

predecessor superintendent, a female, did not have a safe in which she had secured petty cash funds" (*id.* ¶ 42), and indeed, "did not even have the petty cash funds available" (*id.* ¶ 48).

WMATA challenged the original complaint with a motion for judgment on the pleadings that it filed on August 24, 2015. (*See* ECF No. 12.)  However, subsequent to the filing of this motion, this Court granted Tapp leave to amend the complaint, and WMATA's motion was thereafter dismissed as moot. (*See* Min. Order of Dec. 10, 2015.)  WMATA has now filed a renewed motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), with respect to all of the amended complaint's counts.  WMATA argues that Count I fails because WMATA is a state agency that is not bound by internal procedures with respect to the firing of its employees, and because Tapp was an at-will employee without a constitutional interest in continued employment that could "trigger a violation under the Fifth or Fourteenth Amendment[s]." (Def.'s Mot. at 7 (citation omitted).)  Alternatively, WMATA argues that it did, in fact, follow internal procedure when it terminated Tapp. (*See id.* at 8–9.)  WMATA further contends that it is entitled to the entry of judgment in its favor with respect to Count II, because WMATA is not a "person" subject to Section 1983 claims, and that even if it is not immune, harm to reputation alone does not amount to the unconstitutional deprivation of a plaintiff's liberty interest. (*See id.* at 9–10.)  WMATA maintains that Tapp's claim of gender discrimination must also be dismissed for failure to exhaust administrative remedies under Title VII, because "[t]here is no record that [Tapp] has filed the requisite complaint with the EEOC[,]" nor does the amended complaint allege such a filing or attach a copy of "a right-to-sue letter[.]" (*Id.* at 12.)

Lastly, WMATA contends that Counts IV and V fail because WMATA "enjoys sovereign immunity" from suit for intentional torts committed in a discretionary or governmental capacity, and, here, the decision to issue the BOLO flyer was undertaken in WMATA's discretion to warn its personnel that Tapp was no longer allowed on non-public WMATA property and was carried out by Metro policemen.  (*See id.* at 11–12.)

For his part, Tapp makes a series of arguments that appear to be substantively related to Counts I, II, IV and V, and that seem to advance the contention that he opposes WMATA's motion for judgment on pleadings with respect to those counts.[5]  In regard to Count I, Tapp argues that WMATA is not just a state agency, but also an agency of the District of Columbia, and as such it is bound to follow its own established termination procedures, or risk violating the Fifth Amendment, notwithstanding Tapp's at-will status.  (*See* Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 27, at 6.)  Next, with respect to Count II, Tapp argues that the injury he suffered by the posting of the BOLO flyer rises above mere reputational harm: it has foreclosed "his future employment opportunities" and deprived him of "his right to live and ply his trade free from governmentally imposed stigma."  (*Id.* at 10 (citation omitted).)  Lastly, Tapp opposes WMATA's invocation of sovereign immunity as a shield to being sued for the common law tort claims Tapp alleges in Counts IV and V.  Specifically, Tapp argues

---

[5] The Court hesitates in its description of Tapp's brief in opposition, primarily because he *claims* to be addressing only the arguments that WMATA has made regarding Counts I and II.  (*See* Pl.'s Opp'n at 8 ("Here, not only did Defendant WMATA violate procedural due process granted through the 5th Amendment . . . by failing to observe its own regulations when it terminated Plaintiff Tapp [(Count I)], it also deprived him of his constitutionally protected liberty interest also in violation of the 5th Amendment [(Count II)].").)  Nevertheless, the substance of the contentions that he makes plainly relate to WMATA's arguments under the other counts as well, except for Count III.  (*See, e.g.*, *id.* at 9–10 (arguing that WMATA's actions are not discretionary or "governmental, and thus, [not] entitled to sovereign immunity").)  Thus, this Court has construed Tapp's opposition brief liberally, even as it has struggled to ascertain the true nature of Tapp's contentions.

that the issuance and dissemination of the BOLO flyer was not "taken in pursuit of standard police functions" and was outside the scope of WMATA's permissible discretion in effecting Tapp's termination (*id.* at 9; *see also id.* at 9–10); thus, WMATA's actions were not within the scope of the conduct normally covered by its sovereign immunity (*see id.* 11–12).

The Defendant's motion for judgment on the pleadings has been fully briefed (*see* Pl.'s Opp'n; Def.'s Reply, ECF No. 29), and is now ripe for this Court's consideration.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows for a motion for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]"  Fed. R. Civ. P. 12(c).[6]  "A motion brought under [Rule] 12(c) 'is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking at the substance of the pleadings and any judicially noted facts.'" *All. of Artists & Recording Cos., Inc. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 16 (D.D.C. 2016) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).  "Because a Rule 12(c) motion would summarily extinguish litigation at the

---

[6] Pleadings are closed for Rule 12(c) purposes when a complaint and an answer have been filed.  *See* Fed. R. Civ. P. 7(a); *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 60 (D.D.C. 2007).  Here, WMATA filed a renewed motion for judgment on the pleadings under Rule 12(c) in response to the amended complaint without first filing an amended answer.  Although a valid Rule 12(c) motion ordinarily requires a new answer, or a stipulation that the original answer stands, both WMATA and Tapp have proceeded as if the original answer remains in effect in response to the amended complaint. Under these circumstances, "[t]he fact that both parties presented this motion as though the original answer was responsive to the amended complaint[] is equivalent to such an implied stipulation or a tacit acquiescence[,]" *see, e.g.*, *Deming v. Turner*, 63 F. Supp. 220, 222 (D.D.C. 1945), and the Court will treat the original answer as if it is responsive to the amended complaint for the purpose of WMATA's Rule 12(c) motion.

threshold and foreclose the opportunity for discovery and factual presentation, the Court must treat [such a] motion with the greatest of care and deny it if there are allegations in the complaint which, if proved, would provide a basis for recovery." *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010) (internal quotation marks and citation omitted).

To prevail on a Rule 12(c) motion, "[t]he moving party must show that no material issue of fact remains to be solved and that it is entitled to judgment as a matter of law." *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 888 F. Supp. 2d 189, 191 (D.D.C. 2012) (citation omitted). The standard of review for motions pursuant to Rule 12(c) essentially mirrors the standard for motions to dismiss under Rule 12(b). *See Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 58 (D.D.C. 2007) ("The appropriate standard for reviewing a motion for judgment on the pleadings is virtually identical to that applied to a motion to dismiss under Rule 12(b)(6)." (citation omitted)). However, a Rule 12(c) motion is not identical to a Rule 12(b) motion in every regard. That is, while the focus of a motion to dismiss lies with the plaintiff's inability to proceed on his claim (whether due to the Court's lack of subject-matter jurisdiction, or the complaint's lack of factual allegations to support a claim, or otherwise), a motion for judgment on the pleadings centers upon the substantive merits of the parties' dispute. Put another way,

> The granting of a Rule 12(b) motion typically merely means that the plaintiff has failed to satisfy one of the procedural prerequisites for asserting his claim for relief. A motion for judgment on the pleadings, however, theoretically is directed towards a determination of the substantive merits of the controversy; thus, federal courts are unwilling to grant a judgment under Rule 12(c) unless it is clear that the merits of the controversy can be fairly and fully decided in this summary manner.

5c Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1369 (3d ed. 2004) (footnotes omitted).

"It is axiomatic . . . that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." *Id.* § 1368.  Accordingly, in deciding a Rule 12(c) motion for judgment on the pleadings, the court relies on "the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice." *Allen v. U.S. Dep't of Educ.*, 755 F. Supp. 2d 122, 125 (D.D.C. 2010) (citation omitted).  However, "the court is not bound to accept the legal conclusions of the non-moving party." *Baumann*, 744 F. Supp. 2d at 222 (citing *Taylor v. F.D.I.C.,* 132 F.3d 753, 762 (D.C. Cir. 1997)).  By contrast, the court may not consider "[f]actual allegations in briefs or memoranda of law . . . , particularly when the facts they contain contradict those alleged in the complaint." *Robinson*, 403 F. Supp. 2d at 47 (citing *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994)).

## III.   ANALYSIS

### A. WMATA Is Entitled To Judgment On Count I Because, As An At-Will Employee, Tapp Did Not Have A Constitutionally Protected Property Interest In His Employment

In Count I of his amended complaint, Tapp claims that WMATA's termination of his employment without strict compliance with its internal procedures violated his Fifth Amendment due process rights.  (*See* Am. Compl. ¶ 23–25 (referencing U.S. Const. amend. V, which provides that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law"); *see also* Pl.'s Opp'n at 8 ("WMATA violate[d]

procedural due process granted through the 5th Amendment to the United States Constitution by failing to observe its own regulations when it terminated Plaintiff Tapp[.]").)  In order to establish a Fifth Amendment due process violation, a plaintiff must demonstrate (1) that he was "deprived of protected property or liberty interests," *Orange v. District of Columbia*, 59 F.3d 1267, 1273 (D.C. Cir. 1995) (citation omitted); and (2) that, in effecting that deprivation, the defendant did not afford him the procedural safeguards guaranteed by the Constitution, *see id.* (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).  The first element in this analysis is a threshold inquiry for the courts.  Thus, "[o]nly if the court first finds that a liberty or property interest is affected will it go on to a balancing of interests analysis to determine what level of procedural protection [would have been] appropriate." *Mazaleski v. Treusdell*, 562 F.2d 701, 709 (D.C. Cir. 1977) (internal quotation marks and citations omitted).

This Court perceived Count I of Tapp's amended complaint as alleging that the termination of his employment was an unconstitutional deprivation of his property interests.  (*See* Am. Compl. ¶¶ 23–25.)[7]  It is by now well established that, to sustain a

---

[7] Tapp does not specify in his amended complaint whether he is alleging a violation of his liberty or property interest in Count I.  It is well established that, while termination of a public employee may impair the liberty interest in pursuing a chosen career, *see Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572–73 (1972), to state a claim for a deprivation of liberty arising from the termination of employment, a plaintiff must show either that the defendant publicized the reasons for his discharge so as to "damage his standing and associations in his community" or "foreclose[] his freedom to take advantage of other employment opportunities." *McCormick v. District of Columbia*, 899 F. Supp. 2d 59, 65 (D.D.C. 2012), *aff'd*, 752 F.3d 980 (D.C. Cir. 2014).  In Count I, Tapp does not allege that the reasons behind his *termination* were publicized by WMATA, or that the basis for his discharge was so stigmatizing that it foreclosed his future employment opportunities.  Moreover, the allegation that WMATA's actions regarding the distribution of the BOLO flyer caused these harms and implicated Tapp's liberty interests appears in Count II of Tapp's amended complaint.  (*See* Am. Compl. ¶ 33.)  Thus, this Court reads Count I solely as alleging a deprivation of a property interest in Tapp's continued employment.

deprivation of property claim that is based on the termination of employment, a plaintiff "must demonstrate a property interest in continued employment." *Orange*, 59 F.3d at 1274. "Most cases involving government employees fall into one of two categories: terminable at will or terminable only for cause." *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988). That is, a plaintiff has "a property interest in his job only if, under District of Columbia law, he did not serve in his job at his employer's will, but he could be removed only for cause." *Thompson v. District of Columbia*, 530 F.3d 914, 918 (D.C. Cir. 2008) (internal quotation marks and citation omitted). The reason behind this is clear: those employees who are terminable only for cause "can expect to remain employed unless they do something warranting their termination[,]" while "[t]hose who are terminable at will have no property interest [in their employment] because there is no objective basis for believing that they will continue to be employed indefinitely." *Hall*, 856 F.2d at 265; *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577–78 (1972) (finding that no property interest arises from a limited-term contract that is not renewed); *Mills v. D.C. Dep't of Mental Health Saint Elizabeths Hosp. Managers*, 756 F. Supp. 2d 55, 59 (D.D.C. 2010) ("As a general rule, an at-will employee may be discharged at any time and for any reason, or for no reason at all, and hence has no protected property interest triggering due process concerns[.]" (internal quotation marks and citations omitted)); *Ekwem v. Fenty*, 666 F. Supp. 2d 71, 78 (D.D.C. 2009) (finding that a government at-will employee had "no property interest in his continued employment").

Here, although Tapp alleges in Count I that "WMATA wrongfully and illegally terminated [his] employment" (Am. Compl. ¶ 24) "in violation of the 5th Amendment"

because it "failed to observe its own rules" when it fired him (*id.* ¶ 25), Tapp was indisputably an at-will employee of WMATA, and even he concedes this fact.  (*See* Pl.'s Opp'n at 6 (asserting that "the fact that Plaintiff was an at-will employee" should not excuse WMATA's behavior)).  Therefore, this Court concludes that Count I fails as a matter of law because Tapp's employment did not constitute a property right that triggers the procedural protections of the Due Process Clause.[8]

### B. Because WMATA Is Not A "Person" Subject To 42 U.S.C. § 1983, It Is Entitled To Judgment On Tapp's Count II Claim

In Count II, Tapp alleges that WMATA is liable under Section 1983 of Title 42 of the United States Code because the "false and defamatory [BOLO] flyer has violated Plaintiff's liberty to be able to live and freely ply his trade as it has so stigmatized him that it has foreclosed significant employment opportunities[.]"  (Am Compl. ¶ 33; *see also id.* at 7 (alleging a "[d]eprivation of [l]iberty" in violation of the Fifth and Fourteenth Amendments).)  In its Rule 12(c) motion, WMATA contends that, even if the BOLO flyer deprived Tapp of a constitutionally protected liberty interest, WMATA "is not subject to suit for claims under 42 U.S.C. § 1983 because it is not a 'person' within the meaning of the statute[.]"  (Def.'s Mot. at 9.)

---

[8] WMATA spends considerable time and effort addressing Count I under the standard set out in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), which "has come to stand for the proposition that agencies may not violate their own rules and regulations to the prejudice of others." *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005).  (*See also* Def.'s Mot. at 6–9; *see, e.g., id.* at 7 ("There are four reasons why Plaintiff's *Accardi* claim, articulated in Count I of his Amended Complaint, must be dismissed.")).  However, even liberally construed, Tapp's amended complaint makes no mention of this type of claim, which is a distinct cause of action that differs from a claim brought under the Fifth Amendment's Due Process Clause.  *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 103–04, 106 (D.D.C. 1999) (explaining that the *Accardi* doctrine is separate and apart from a constitutional due process analysis).  Plaintiff had an opportunity to press an *Accardi* claim in his complaint, if he had so desired, when he was granted leave to amend his pleading after a full round of briefing on his claims (*see* Min. Order of Dec. 10, 2015), but he failed to do so.  Consequently, this Court will not now read this cause of action into the amended complaint.

This Court agrees.  Section 1983 states that "[e]very person" who, under the color of state law, subjects another to the deprivation of any constitutional right shall be liable to the injured party.  42 U.S.C. § 1983.  But no less an authority than the Supreme Court of the United States has made clear that States and their agencies and officials cannot be sued under Section 1983 because they are not "persons" within the meaning of that statute.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Al Fayed v. C.I.A.*, 229 F.3d 272, 274 (D.C. Cir. 2000) (recognizing that in *Will*, the Supreme Court held that the term "person" under Section 1983 excludes States as a matter of statutory interpretation).  And there is no question that, as an interstate compact agency created by Maryland, Virginia, and the District of Columbia, WMATA is an arm of its signatory states for Section 1983 purposes and, as a result, cannot be sued under that statute.  *See, e.g.*, *Cutchin v. District Of Columbia*, No. 14-0206, 2016 WL 1267154, at *3 (D.D.C. Mar. 31, 2016) (dismissing a Section 1983 claim against WMATA because it is not a "person[]" under the statute); *Headen v. WMATA*, 741 F. Supp. 2d 289, 294 (D.D.C. 2010) (same); *Lucero–Nelson v. WMATA*, 1 F. Supp. 2d 1, 7–8 (D.D.C. 1998) (same).  Thus, WMATA is entitled to judgment on Count II.

### C.    WMATA Is Immune From Liability For The Common Law Tort Claims That Tapp Brings In Counts IV and V

In addition to the alleged constitutional violations that Tapp has brought in this action, Tapp seeks to maintain tort claims against WMATA for false light/privacy invasion (Count IV), and for intentional infliction of emotional distress (Count V), arising from WMATA's publication of the BOLO flyer after his termination.  (*See* Am Compl. ¶¶ 34–38, 53–58.)  As noted, WMATA is "a quasi-governmental entity created

by its signatory parties," and that means it "is entitled to share the sovereign immunity of those parties with respect to common law tort actions." *Beatty v. WMATA*, 860 F.2d 1117, 1126 (D.C. Cir. 1988) (internal quotation marks and citation omitted); *see also Morris v. WMATA,* 781 F.2d 218, 219–20 (D.C. Cir. 1986). Thus, "[t]o the extent the . . . complained-of actions fall within [WMATA's] cloak of immunity," this Court "lack[s] subject matter jurisdiction over such claims." *Smith v. WMATA*, 290 F.3d 201, 205 (4th Cir. 2002). Consequently, in order to confirm that the Court has subject matter jurisdiction over Tapp's tort claims (or, alternatively, in order to determine that no subject matter jurisdiction exists such that WMATA is entitled to judgment as a matter of law with respect to these claims), this Court must evaluate the scope of WMATA's immunity.

It is well established that WMATA has some degree of sovereign immunity by virtue of having been created through a compact entered into by two sovereign States— Maryland and Virginia—and a municipality that is controlled by Congress. *See* U.S. Const. amend. XI (establishing States's constitutional immunity from suit); *see also Morris*, 781 F.2d at 219 ("Congress has power to legislate for the District of Columbia and to create an instrumentality that is immune from suit."). However, it is also clear that sovereign immunity can be abridged by statute, and Section 80 of the Washington Metropolitan Area Transit Authority Compact, D.C. Code § 9–1107.01—the charter pursuant to which WMATA was established—includes a limited waiver of immunity that specifies the circumstances in which that immunity can, and cannot, be invoked to defend against tort claims. As relevant here, Section 80 provides that WMATA

> *shall be liable* for its contracts and for its torts and those of its Directors, officers, employees and agent *committed in the conduct of any*

16

> *proprietary function*, in accordance with the law of the applicable
> signatory (including rules on conflict of laws), but *shall not be liable*
> for any torts *occurring in the performance of a governmental function.*

D.C. Code Ann. § 9-1107.01(80) (emphasis added).  Thus, for present purposes, the key question is whether WMATA's decisions to issue a BOLO flyer and to disseminate it publicly were acts that were committed pursuant to a "governmental function" of the agency, or whether WMATA's acts can otherwise be characterized as committed in the conduct of WMATA's "proprietary function" (i.e., whether they are ministerial, non-discrete acts).  *See McKethean v. WMATA*, 588 A.2d 708, 712–13 (D.C. 1991).

Not surprisingly, WMATA's memorandum in support of its Rule 12(c) motion maintains that this Court should find that WMATA was not performing a proprietary function when it decided that a BOLO should issue, because warning other employees regarding a former employee's termination is a discretionary employment action.  (*See* Def.'s Mot. at 11–12.)  WMATA also insists that, when WMATA police undertook to disseminate the BOLO flyer, they were performing a classic governmental function because "[p]olice activity is quintessentially governmental." (Def.'s Mot. at 11.)  Tapp responds that Metro police did not post the BOLO flyers "in pursuit of standard police functions" but, instead, were directed to do so by the "WMATA agents who engaged in his illegal termination[.]"  (Pl.'s Opp'n at 9.)  Further, Tapp argues that "while Defendant WMATA may have sovereign immunity with respect to decisions to hire and fire, . . . stigmatizing an employee and foreclosing his right to future employment opportunities" are not required aspects of terminating an employee's employment, and thus, the BOLO decision was "not a discretionary function shielded by sovereign immunity."  (*Id*. at 10.)  As explained below, this Court finds that WMATA has the better of this dispute.

"Because the distinction between proprietary and governmental functions has created a quagmire that has long plagued the law of municipal corporations," courts in this Circuit "have interpreted section 80 as incorporating the distinction between discretionary and ministerial functions[,]" which evolved under the jurisprudence that pertains to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. *KiSKA Const. Corp. v. WMATA*, 321 F.3d 1151, 1158 (D.C. Cir. 2003) (internal quotation marks and citations omitted). Under this framework, when the agency commits a ministerial act, it is engaging in a proprietary function. For example, WMATA's operation of the metro system and its implementation of transportation designs have been found to be ministerial/proprietary acts, and, therefore, such acts are not shielded from suit if conducted negligently. *See, e.g.*, *Heffez v. WMATA*, 569 F. Supp. 1551, 1553 (D.D.C. 1983) (managing the subway system), *aff'd*, 786 F.2d 431 (D.C. Cir. 1986); *Qasim v. WMATA*, 455 A.2d 904, 906 (D.C. 1983) (en banc) (provision of mass transportation).

As a practical matter, for the purpose of determining the scope of immunity in contexts such as this one, courts first ask whether the challenged conduct "amounts to a 'quintessential' governmental function, like law enforcement." *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (citing *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997); *see also id.* (emphasizing that such acts always "fall[] within the scope of WMATA's sovereign immunity"). If this is so, then any tort stemming from such an act is protected by sovereign immunity and the Court's inquiry ends. If the allegedly tortious activity is *not* a quintessential government function, however, then a two-part test for determining whether the act was committed pursuant to a discretionary function applies. First, the court considers "whether any statute, regulation, or policy

specifically prescribes a course of action for [the decision-maker] to follow." *Id.*
(internal quotation marks and citation omitted).  Such a legal prescription, if not
followed, may render the act non-discretionary and thus proprietary for the purpose of
sovereign immunity.  *See KiSKA*, 321 F.3d at 1159.  But if the governing regulation
leaves room for the exercise of discretion, or if there is no regulation proscribing a
particular course of conduct at all, the court considers a second question: "whether the
exercise of discretion is grounded in social, economic, or political goals[,]" and if it
answers that question in the affirmative, then the decision at issue is deemed
susceptible to policy judgment and is seen as fitting "within section 80's retention of
sovereign immunity."  *Beebe*, 129 F.3d at 1287.  At this stage, the key determinant is
the decision-maker's *exercise of discretion* and the limits (if any) on his decision-
making, i.e., only those acts that are *not* discretionary are properly deemed to have been
taken in furtherance of ministerial/proprietary functions and subject to suit.  *See KiSKA*,
321 F.3d at 1158.

    With this legal framework in mind, this Court concludes that WMATA's decision
to issue a BOLO warning as part of Tapp's post-termination process was not an act that
was taken in furtherance of a quintessential governmental function, but *was* an exercise
of discretion by WMATA as an employer such that the agency's sovereign immunity
shields it from liability for that decision.  It is clear beyond cavil that WMATA's
"employment decisions are not quintessential governmental functions—after all, private
entities also hire and fire employees[,]" *Beebe*, 129 F.3d at 1287—but WMATA might
nevertheless be subject to suit for such employment decisions if they are deemed
ministerial (proprietary) under the two-part "discretionary function" test.  Here, the

Compact confers upon WMATA expansive authority regarding its personnel practices, including its ability to terminate offices and employees, *see* D.C. Code § 9-1107.01(12)(g) (granting WMATA the power to "[c]reate and abolish offices, employments and positions . . . as it deems necessary for the purposes of the Authority, and fix and provide for the qualification, appointment, [and] *removal*, . . . of its officers and employees without regard to the laws of any of the signatories" (emphasis added)), and Tapp has not pointed to any regulation or post-termination procedure that restricts WMATA's authority to issue the BOLO flyer.  This Court is not aware of any binding limitation on WMATA in this regard; thus, the only determination left for this Court is whether WMATA's decision to issue the BOLO flyer was an exercise of discretion grounded in social, economic, or political goals.

This Court concludes that it was.  Courts have held that decisions regarding the firing of WMATA employees are discretionary, and the scope of that discretion encompasses not only the ultimate discharge determination, but also the manner in which the termination is carried out.  *See Smith v. WMATA*, No. Civ. A. 95-0687-LFO, 1997 WL 182286, at *4 (D.D.C. Apr. 4, 1997), *aff'd*, No. 97-7071, 1998 WL 315575 (D.C. Cir. May 28, 1998)*; see also Malloy v. WMATA*, No. CV 15-1499, 2016 WL 2962196, at *7 (D.D.C. May 20, 2016) (*"*WMATA's actions in suspending and removing [the plaintiff] from his position . . . are immune for suit in tort.").  This is because such employment decisions—and the acts necessary to implement them— inherently involve numerous social and economic factors, "including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition[,]" *Beebe*, 129 F.3d at 1287 (internal

quotation marks and citations omitted).  Indeed, in this very case, it appears that WMATA's decision to issue the BOLO flyer was rooted in safety considerations. *Cf. James v. WMATA*, 649 F. Supp. 2d 424, 430 (D. Md. 2009) (finding no waiver of sovereign immunity under Section 80 where WMATA's decision to restrict activities and entry onto its property involved "policy concerning the promotion of safe and efficient transportation").  It follows that any tortious conduct that WMATA may have committed here is immune from suit "because such torts arose out of WMATA's administration of its personnel system" and property, and its decision in this regard was made pursuant to the exercise of its discretion.  *Smith*, 1997 WL 182286, at *3.

To the extent that Tapp is challenging the *dissemination* of the BOLO flyer by WMATA police, separate and apart from the agency's decision to issue the warning, this Court further finds that that the WMATA police were engaged in an activity that is quintessentially governmental.  *See Dant v. District of Columbia*, 829 F.2d 69, 74 (D.C. Cir. 1987) ("WMATA's police activities are an exercise of a 'governmental' function[.]").  Section 76 of the Compact enables and authorizes WMATA to maintain a police force with significant police power to protect passengers and property, *see* D.C. Code § 9-1107.01(76)(a), and it also grants WMATA the power to promulgate rules and regulations to assure the safety and protection of the transit facilities, which are enforceable by the WMATA police force, *see id*. § 9-1107.01(76)(e).  Thus, this Court finds that the activities of the WMATA police in disseminating the BOLO flyer here, which was aimed at protecting the metro riders, employees, and property, were quintessentially governmental such that any tort stemming from that conduct is barred by WMATA's sovereign immunity.

**D.    Count III Cannot Be Resolved Pursuant To WMATA's Rule 12(c) Motion Because, On Its Face, The Amended Complaint Does Not Allege Facts That Establish That Tapp Has Failed To Exhaust Administrative Remedies As A Title VII Claim Requires**

WMATA contends that it is entitled to judgment on Count III because Tapp has failed to exhaust the administrative remedies that he must undertake in order to sustain an employment-discrimination claim brought under Title VII.  (*See* Def.'s Mot. at 12–13 (arguing that "[t]here is no record that Plaintiff has filed the requisite complaint with the EEOC" because Tapp did not include a "right-to-sue letter from the EEOC" in his amended complaint nor does he allege "that he has filed a complaint with the EEOC within the time period specified by the statute").  WMATA further maintains that, because Tapp's opposition to its Rule 12(c) motion does not address this failure to plead exhaustion, this Court should treat the exhaustion matter as conceded.  (*See* Def.'s Reply at 5.)

This Court will address the last point first.  It is true that, "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing *F.D.I.C. v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997)); *see also* LCvR 7(b).  But exhaustion is an affirmative defense that must be pled and proven by the defendant, *see Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985), and the D.C. Circuit has strongly suggested that, under such circumstances, the plaintiff's silence on the issue is insufficient to warrant the entry of judgment in the defendant's favor, *see Cohen v. Bd. Of Trs. of the Univ. of the D.C.*, 819 F.3d 476, 481–83 (D.C. Cir. 2016).  Thus, this Court will proceed to entertain the merits of WMATA's contention that it is entitled to judgment

per Rule 12(c) due to Tapp's failure to plead facts that establish that administrative exhaustion has occurred. *Cf. Bender*, 127 F.3d at 68 (noting that "the discretion to enforce [the concession] rule lies wholly with the district court").

Because a plaintiff's "failure to exhaust is an affirmative defense that must be pleaded and established by the defendant[]" in Title VII cases, a Title VII plaintiff "need not plead exhaustion in the complaint." *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 85 (D.D.C. 2014); *see also Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010) (noting that Title VII exhaustion requirements are not jurisdictional). The Federal Rules of Civil Procedure "do not require a plaintiff to anticipate affirmative defenses which might be raised by a defendant." *Chem-Met Co. v. Metaland Int'l, Inc.*, No. Civ. A. 96-2548, 1997 WL 74541, at *2 (D.D.C. Feb. 19, 1997) (citing Fed. R. Civ. P. 8(a)). And it is precisely "[b]ecause exhaustion is not a pleading requirement[,]" that Tapp was "free to omit" from his complaint allegations of fact that relate to the exhaustion issue. *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011). This means that WMATA's suggestion that it is entitled to judgment in its favor on exhaustion grounds simply and solely because Tapp has faile to allege facts to establish exhaustion (*see* Def.'s Mem. at 12–13) cannot be countenanced. Moreover, given that Tapp's amended complaint is devoid of any facts related to exhaustion, this Court would be "required to consider matters outside the pleadings to determine the validity of the [Defendant's] affirmative defense[,]" *id.*, which this Court cannot do when resolving a Rule 12(c) motion, *Robinson*, 403 F. Supp. 2d at 47 (explaining that, under Rule 12(c), "the Court may not rely on facts outside of the pleadings" in reaching the merits of the argument). In other words, even if

WMATA had undertaken to provide this Court with evidence that demonstrated a lack of exhaustion by Tapp (it has not done so), this Court could only grant WMATA's Rule 12(c) motion if it was clear on the face of the amended complaint that Tapp failed to exhaust his administrative remedies. *See Chem-Met*, 1997 WL 74541, at *2 (denying a Rule 12(c) motion because it "improperly seeks to require the plaintiff to plead facts to negate an anticipated affirmative defense"); *Brown*, 777 F.2d at 13, 16–18; *cf.* Wright & Miller, *supra*, § 1368 (explaining that "[i]f the affirmative defense clearly is established in the pleadings . . . then a judgment on the pleadings may be appropriate[,]" but if "matter[s] outside the pleadings would have to be introduced to establish [the affirmative] defense" then "a summary judgment motion rather than one for judgment on the pleadings undoubtedly [is] the appropriate procedure").

In sum, because Tapp's amended complaint does not allege any facts that relate to the affirmative defense of non-exhaustion, this Court cannot conclude, as a matter of law, that "plaintiff cannot prove any set of facts entitling him to relief." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 265 (D.D.C. 2011); *see, e.g.*, *McNamara v. Picken*, 866 F. Supp. 2d 10, 17 (D.D.C. 2012) (denying a 12(c) motion because the defendant bore the burden of proving his affirmative defense and the complaint's facts did not support such finding).  What is more, WMATA's Rule 12(c) motion cannot be transformed into a motion for summary judgment on exhaustion grounds, *see* Fed. R. Civ. P. 12(d), because WMATA itself has not provided any proof to support its contention that Tapp failed to exhaust his administrative remedies. *See Drewrey v. Clinton*, 763 F. Supp. 2d 54, 61 (D.D.C. 2011) ("Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not

satisfy the defendant's burden." (citing *Brown*, 777 F.2d at 12)), *aff'd*, 466 F. App'x 9 (D.C. Cir. 2012).  As a result, WMATA's motion must be denied with respect to Count III of Tapp's amended complaint, and the Court will permit the parties to engage in a limited period of discovery on the exhaustion issue, after which WMATA may move for summary judgment, proffering evidence to support its affirmative defense, if it so chooses.

## IV.    CONCLUSION

For the reasons explained above, WMATA is entitled to judgment on Counts I, II, IV, and V because there is no material issue of fact with respect to these claims as Tapp has alleged them, and even so, these claims cannot be sustained as a matter of law.  But, Tapp's Title VII employment-discrimination claim (Count III) survives WMATA's Rule 12(c) motion, because the Court cannot conclude that Tapp failed to exhaust his administrative remedies based solely on the information set forth in the amended complaint.  Accordingly, and as set forth in the accompanying order, WMATA's motion for judgment on the pleadings under Rule 12(c) will be **GRANTED IN PART AND DENIED IN PART**, and the Court will permit the parties to engage in a period of limited discovery solely with respect to the issue of whether Tapp exhausted the administrative remedies that are required to sustain his Title VII claim.

DATE:  September 30, 2016

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

25